J-A07032-16

2016 PA Super 92

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RASHEE BEASLEY | |
| Appellant | No. 1149 WDA 2014 |

Appeal from the Judgment of Sentence February 6, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001275-2013
CP-02-CR-0003835-2013

BEFORE:  BOWES, J., MUNDY, J., and JENKINS, J.

OPINION BY JENKINS, J.:                    **FILED APRIL 28, 2016**

Appellant Rashee Beasley appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas following his bench trial convictions for intimidation of witnesses, terroristic threats, conspiracy and hindering apprehension.[1]  We affirm.

The underlying facts and procedural history of this appeal are as follows.  On April 17, 2012, Officer Michael Kosko and Officer David Derbish approached a Jeep Cherokee that had just parked without using a turn signal.  N.T., 11/12/2013, at 20-23.  Officer Kosko asked the driver a few questions through the window of his car.  *Id.* at 23. After the officers

_____

[1]  18 Pa.C.S. §§ 4952(a)(1), 2706(a)(1), 903(c), and 5105(a)(1), respectively.

ascertained that the driver, Jamal Knox, did not have a valid license, Knox drove the Cherokee away from the scene quickly, with Appellant as his passenger. *Id.* at 23-25. After crashing a few times, the vehicle became disabled, and Knox and Appellant exited the Jeep through their respective windows and fled from the police on foot. *Id.* at 26-28. Police recovered 30 stamp bags of heroin and $1,489.00 from Knox and two cell phones and $323.00 from Appellant *Id.* at 28, 37. Additionally, Officer Gromek searched the vehicle and found a firearm. *Id.* at 30. Officer Daniel Zeltner also responded to the scene and advised the other officers that Knox, who had identified himself as "Dante Jones," was actually Jamal Knox. *Id.* at 66. He knew this because of previous dealings with Knox. *Id.* Officer Zeltner had also encountered Appellant on September 26, 2011, when Appellant fled after Officer Zeltner pulled him over. Appellant was charged with fleeing or attempting to elude law enforcement. *Id.* at 143-144. Neither the April 17, 2012 nor the September 26, 2011 incidents are the subject of this appeal, but criminal cases relating to these incidents were pending when police discovered the YouTube video that gave rise to most of Appellant's present convictions.

On November 15, 2012, Officer Aaron Spangler viewed the Facebook page of Beaz Mooga, whom Officer Spangler believed was Appellant. *Id.* at 178-79. From the Facebook page, Officer Spangler accessed several links to YouTube pages that showed rap music videos made by Knox and Appellant,

one of which was entitled "Fuck the Police." *Id.* at 187. The video showed pictures of Appellant and Knox, and the song referenced Officer Zeltner, the officer involved in the September 26, 2011 incident, and Officer Kosko, one of the officers involved in the April 17, 2012 incident. *Id.* at 192. The video made references to killing police officers. *Id.* at 193. The song provides, in relevant part:

> **"Fuck the Police"**
> This first verse is for ***Officer Zeltner and all you FED force*** bitches and ***Mr. Kosko*** can suck my dick for knocking my riches.
> Want beef, well cracker I'm wit it, that whole department can get it.
> All these soldiers in my committee gonna fuck over you bitches, fuck the police bitch, I said it loud
> The fuckin city can't stop me
> Ya'll gonna need Jesus ta bring me down
> And he ain't fuckin wit you dirty devils,
> We makin prank phone calls and as soon as you bitches come we bustin heavy metal (sound of gunfire)
> So now (Kosko?) gonna chase me through these streets and I'm a jam this rusty knife all in his guts and chop his feet.
> You takin money away from Beaz, and all that shit away from me, well ***your shift over at three and I'm a fuck up where you sleep***.
> (Unintelligible) has got you watchin my moves and talkin bout me to your partner,
> I'm watchin you to and I see better when it's darker.
> Highland Park gonna be Jurassic Park, keep on fuckin wit me.
> Hey Beaz go grab (Dre?) and (Squeeze?) and them two two threes, It's Mayhem.
> …
> The cops be on my dick like a rubber when I'm fuckin, so them bitches better run and duck for cover when I'm buckin.
> Thetto superstar committee bitch we ain't scared of nothing.

I keep a forty on waist, I'm gonna wet you like a mop nigga, clip filled to the tippy top wit som *cop killas*.
Fuck the *police, don't bring us no peace*
*That's why I keep my heat when I'm roamin the streets*, cause if you jump out it's gonna be a dump out.
I got my glock and best believe dog gonna bring the pump out, and I'm hittin your chest.  Don't tell me stop cause I'm resisting arrest.
I ain't really a rapper, but I spit wit the best.
I ain't carry no 38 dog, I spit wit a tec
Tha't like 50 shots nigga, that's enough to hit one cop on 50 blocks nigga
I said fuck the cops nigga.
They got me sittin in a cell, watchin my life just pass me, but I ain't wit that shit *like Poploski,*[2]  *I'm strap nasty*.
…
They killed Rhine, and ever since then I've been mugging you bitches.
My Northview niggas they don't fuck wit you bitches, I hate your fuckin guts, I hate you.
*My momma told me not to put this on C.D., but I'm gonna make this fuckin city believe me*, so nigga turn me up.
If Dre was here they wouldn't fuck wit dis here.
Loccs in the army, when he comes back it's real nigga, you bootin up.
Fuck the police, I said it Loud, we'll repeat that.
Fuck the Police, I'm blowin loud wit my seat back.
They cool and that, well Mr. Fed, if you can hear me bitch, go tell your daddy that we're booming bricks.
And them informants that you got, fit to be layin in the posse and *I know exactly who workin, and I'm gonna kill him wit a glock*.
Quote that!
Cause when you find that pussy lyin in the street, look at the shells and put my shit on repeat, and that's on.
Jesus' blood.

_____

[2] "Poploski" is the spelling in the affidavit of probable cause.  In 2009, Richard Poplawski opened fire on Pittsburgh police officers, ultimately killing three and injuring other officers.  *See Commonwealth v. Poplawski*, 130 A.3d 697, 708 (Pa.2015).

> Let's kill these cops, cause they don't do us no good, pullin
> your glock out cause I live in the hood.
> You dirty Bitches, Bitch.

Affidavit of Probable Cause[3] (emphasis added). Officer Spangler sent the video to Officers Zeltner and Kosko, and Appellant was charged at CP-02-CR-0003835-2013 with two counts each of intimidation of a witness or victim, retaliation against a witness, victim or party, and terroristic threats, and one count of criminal conspiracy.

On January 8, 2013, Detective Michael Wilkes went to Tara Beasley's[4] home to serve an arrest warrant on Knox. Paul Webb answered the door and told the officer that only he and his sons were at the residence, but then let the officer in after a voice called from upstairs not to let the police into the house. Detective Wilkes saw several males upstairs and, believing him to be Knox and calling him Knox, arrested Appellant. Appellant did not protest or tell the detective that he was not Knox. He later identified himself at the police station when officers asked for his name. Detective Wilkes returned to the home and found Knox hiding in the ceiling behind tiles that he had noticed were loose when he arrested Appellant. At CP-02-CR-

_____

[3] During trial, the officers testified about some of the lyrics, and the YouTube video was introduced into evidence.

[4] Tara Beasley is Appellant's mother.

0001275-2013, Appellant was charged with two counts of hindering apprehension or prosecution.[5]

On November 21, 2013, the court found appellant guilty of two counts each of intimidation of witnesses and terroristic threats, and one count each of criminal conspiracy and hindering apprehension. The court acquitted Appellant of retaliation against a witness.

On February 6, 2014, the court sentenced Appellant to 12-36 months' incarceration, plus 2 years' probation for intimidation of witnesses. The court imposed concurrent 2-year terms of probation on the second intimidation of witnesses count, and each of his 2 terroristic threat counts, and a concurrent term of 6-12 months' incarceration for hindering apprehension. The court imposed no further penalties on his other convictions.

On February 14, 2014, Appellant filed a motion to reconsider sentence, which the court denied by operation of law on June 19, 2014. On July 18, 2014, Appellant timely filed a notice of appeal. On September 3, 2014, the court ordered Appellant to file a 1925(b) statement by November 2, 2014. On November 7, 2014, Appellant filed a Rule 1925(b) statement along with a motion for *nunc pro tunc* extension to file a 1925(b) statement. On

_____

[5] On June 26, 2013, the Commonwealth filed a motion for joinder for CP-02-CR-0001275-2013 and 02-CR-0003835-2013, which the court granted.

December 4, 2014, the court granted Appellant's motion and deemed Appellant's Rule 1925(b) statement timely filed.

Appellant raises the following issues for our review:

1. WERE [APPELLANT'S] DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I § 9 OF THE PENNSYLVANIA CONSTITUTION VIOLATED WHEN HE WAS CONVICTED OF TWO COUNTS OF 18 PA.C.S. § 2706 TERRORISTIC THREATS, TWO COUNTS OF 18 PA.C.S. § 4952 ATTEMPTED INTIMIDATION OF A WITNESS, ONE COUNT OF 18 PA.C.S. § 903 CRIMINAL CONSPIRACY, AND ONE COUNT OF 18 PA.C.S. § 5105 HINDERING APPREHENSION OR PROSECUTION BASED ON LEGALLY INSUFFICIENT EVIDENCE?

2. WITH RESPECT TO [APPELLANT'S] TWO TERRORISTIC THREATS CONVICTIONS, WAS THE EVIDENCE TO CONVICT HIM OF THOSE CHARGES INSUFFICIENT AS A MATTER OF LAW, WITH THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT EITHER APPELLANT OR A PERSON FOR WHOSE CONDUCT HE WAS LEGALLY RESPONSIBLE HAD COMMUNICATED, EITHER DIRECTLY OR INDIRECTLY, A THREAT — IN THIS CASE, A PERCEIVED THREAT AGAINST THE TWO OFFICERS CONTAINED IN THE RAP VIDEO "F— THE POLICE" — TO EITHER OFFICER MICHAEL KOSKO OR DETECTIVE DANIEL ZELTNER?

3. WITH RESPECT TO [APPELLANT'S] TWO ATTEMPTED INTIMIDATION OF WITNESS CONVICTIONS, WAS THE EVIDENCE TO CONVICT HIM OF THOSE CHARGES INSUFFICIENT AS A MATTER OF LAW, WITH THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND REASONABLE DOUBT, THAT THE OBJECTIVE OF APPELLANT AND/OR A PERSON FOR WHOSE CONDUCT HE WAS LEGALLY RESPONSIBLE WAS, IN CREATING THE "F— THE POLICE" RAP VIDEO AND HAVING IT UPLOADED ONTO THE INTERNET WEBSITE YOUTUBE, TO INDUCE EITHER OFFICER MICHAEL KOSKO OR DETECTIVE DANIEL ZELTNER TO EITHER REFRAIN FROM TESTIFYING AGAINST APPELLANT AND/OR HIS CO-DEFENDANT, JAMAL KNOX,

REGARDING THE EVENTS RESULTING IN THE ARREST OF THE TWO MEN ON APRIL 17, 2012, OR ELSE TO PROVIDE FALSE OR MISLEADING TESTIMONY REGARDING THOSE EVENTS, OR ELSE TO FAIL TO APPEAR IN COURT TO TESTIFY REGARDING THOSE EVENTS, WITH HIS OR THEIR ULTIMATE GOAL BEING TO OBSTRUCT, IMPEDE, IMPAIR, PREVENT, OR OTHERWISE INTERFERE WITH THE ADMINISTRATION OF CRIMINAL JUSTICE?

4. WITH RESPECT TO [APPELLANT'S] CRIMINAL CONSPIRACY CONVICTION, WAS THE EVIDENCE TO CONVICT HIM ON THAT CHARGE INSUFFICIENT AS A MATTER OF LAW, WITH THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT HAD ENTERED INTO AN AGREEMENT WITH JAMAL KNOX SEEKING TO COMMUNICATE A THREAT TO EITHER OFFICER KOSKO OR DETECTIVE ZELTNER, WITH THE ULTIMATE GOAL OF THAT COMMUNICATION BEING TO INDUCE THE OFFICERS TO REFRAIN FROM TESTIFYING AGAINST THEM IN THEIR PENDING CRIMINAL CASE OR OTHERWISE SLANT THEIR TESTIMONY IN A MANNER THAT WOULD FAVOR THE DEFENSE IN THAT CASE?

5. FINALLY, WITH RESPECT TO [APPELLANT'S] HINDERING APPREHENSION OR PROSECUTION CONVICTION, WAS THE EVIDENCE TO CONVICT HIM OF THAT CHARGE INSUFFICIENT AS A MATTER OF LAW, WITH THE COMMONWEALTH HAVING FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT APPELLANT WAS AWARE OF THE FACT THAT JAMAL KNOX WAS HIDING INSIDE HIS MOTHER'S HOUSE AND THAT HE (I.E., APPELLANT) AFFIRMATIVELY ACTED TO CONCEAL KNOX WITHIN THAT RESIDENCE?

Appellant's Brief at 3-6.

Appellant's issues challenge the sufficiency of the evidence for his convictions.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

In his second issue,[6] Appellant claims the Commonwealth failed to present sufficient evidence that he communicated the video to the officers. He argues that neither he nor Knox tried to communicate the video and that their posting of the video on YouTube and linking it to a Facebook page does not constitute the requisite communication because it is not direct

_____

[6] Appellant's first issue challenges the sufficiency of the evidence for all of his convictions. Our discussion of Appellant's second through fifth issues will resolve his first issue.

communication. He claims that the video was not posted with intent or reckless disregard to terrorize the police officers. He argues that because communication is an element of terroristic threats, the evidence is insufficient to support his conviction. We disagree.

The crime of terroristic threats is defined as follows:

**§ 2706. Terroristic threats**

**(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706.

For a defendant to be convicted of terroristic threats,

"the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 684 A.2d 597, 600 ([Pa.Super.]1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, 797 A.2d 260, 262 (Pa.Super.2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Tizer*, 684 A.2d at 600.

- 10 -

*Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa.Super.2003).

Here, Appellant does not claim that he did not sing the words of his rap song, which unquestionably threaten violence. Further, he does not aver that the officers never saw the threatening video. He argues, rather, that he did not intentionally or recklessly communicate the threat to the officers.

> Here, the terroristic threats statute is clear and unambiguous that a communication must be conveyed. *See* 18 Pa.C.S.[] § 2706(a)(1); *see also* 1 Pa.C.S.[] § 1928(b)(1). The official comment to Section 2706 states, "[t]he purpose of the section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience." 18 Pa.C.S.[] § 2706, official comment–1972; *see also* 1 Pa.C.S.[] § 1921(a); *Commonwealth v. Hardwick,* 445 A.2d 796, 797 ([Pa.Super.]1982) (same).
>
> Therefore, while the statute does not expressly address whether to construe a threat as being made at the time it is uttered or at the time it is received, we observe that a person's "personal security" cannot be "seriously impair[ed]" by a threat unless he hears it. *Id.* Accordingly, based on the statute's plain meaning, our strict construction of it, and the legislature's stated purpose in enacting it, we conclude that the term, "communicates," as used in the terroristic threats statute, contemplates that the threat be received.

*Commonwealth v. Vergilio*, 103 A.3d 831, 833-34 (Pa.Super.2014) *appeal denied,* 114 A.3d 416 (Pa.2015).

Terroristic threats do not have to be communicated directly. *See Commonwealth v. Kelley*, 664 A.2d 123, 127 (Pa.Super.1995) (holding a threat was communicated when the appellant gave a secretary a message to threaten violence to certain intended recipients). Further, a defendant does

- 11 -

not need to intend to carry out the consequence of the threat to communicate a threat. **See Commonwealth v. Cancilla**, 649 A.2d 991, 994 (Pa.Super.1994) (holding a threat was communicated by a phone call that stated a bomb was in a building, although there was no bomb).

The Supreme Court of the United States addressed the subject of Facebook posts as terroristic threats in **Elonis v. United States**, 135 S. Ct. 2001, 2011, 192 L. Ed. 2d 1 (2015). In that case, the defendant posted threatening comments on Facebook in response to people having viewed his posts. The jury convicted the defendant of terroristic threats after the trial court instructed that the Government needed to prove that a reasonable person would regard the defendant's communications as threats. The Supreme Court found this jury instruction was error because it failed to consider the defendant's mental state. The Supreme Court held that "[t]he mental state requirement must therefore apply to the fact that the communication contains a threat." **Id.** at 2012. In reaching this holding, the Court considered how the "presumption in favor of a scienter requirement should apply to *each* of the statutory elements that criminalize otherwise innocent conduct." **Id.**

Here, Appellant had a link on his Facebook page to a YouTube video titled "Fuck the Police." Although his Facebook page did not list his full, legal name, he used the name "Beaz Mooga" which does not completely disguise his last name, Beasley. The rap video specifically threatened to kill Officers

Zeltner and Kosko "wit a glock." We need not ponder whether deciding to broadcast songs or linking YouTube videos to one's Facebook page generally indicates intent to communicate, because Appellant stated his intent by saying in his rap song: "My momma told me not to put this on C.D., but I'm gonna make this fuckin city believe me, so nigga turn me up." Appellant chose not to listen to his mother because he wanted Officers Zeltner and Kosko to hear his message, and they did. He successfully and intentionally communicated his threat. Thus, Appellant's challenge to the sufficiency of the evidence for his terroristic threats convictions merits no relief.

Next, Appellant argues there was insufficient evidence to convict him of intimidation of a witness or attempt thereof, because the Commonwealth did not present evidence that he posted the video on YouTube with the intent of getting the police to do any of the enumerated objectives in the intimidation statute.

Appellant was convicted under the following statute:

**§ 4952. Intimidation of witnesses or victims**

**(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

(1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.

(2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

(4) Give any false or misleading information or testimony or refrain from giving any testimony, information, document or thing, relating to the commission of a crime, to an attorney representing a criminal defendant.

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S. § 4952.

Further, we observe:

[A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary mens rea, "*attempts*" to intimidate a witness or victim. …The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice…. The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

**Commonwealth v. Collington**, 615 A.2d 769, 770 (Pa.Super.1992).

Here, Appellant posted a rap song on YouTube that specifically threatened to kill Officers Zeltner and Kosko while Appellant had criminal

- 14 -

charges pending against him in which these officers were going to testify.[7] This was sufficient evidence from which the court could infer that Appellant posted the video in an attempt to interfere with the administration of the justice system by convincing the police to withhold testimony, and from which the court found the elements of intimidation of a witness beyond a reasonable doubt.

Next, Appellant argues that he and Knox never conspired to commit any crime, and thus they could not be guilty of criminal conspiracy. He admits that they made the video together but contends it was not a crime to do so. Again, we disagree.

The crime of criminal conspiracy is defined by statute:

**§ 903. Criminal conspiracy**

**(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

---

[7] As previously discussed, Appellant intended to communicate his message.

> **(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903.

Appellant and Knox made a YouTube video together in which they threatened to kill Officers Zeltner and Kosko, a communication which supported Appellant's terroristic threats and intimidation of witness convictions. Thus, his creation of the video was an overt act, and he and Knox were part of a criminal conspiracy to commit terroristic threats and intimidation of witnesses.

In his final issue, Appellant argues that he did not affirmatively hinder the apprehension of Knox, and that his decision to refrain from stating his name or telling police that he was not Knox was permissible. He claims that, in the criminal information, the Commonwealth asserted that he had "concealed" Knox in his home, but it did not assert that he harbored him. Further, he contends the Commonwealth failed to produce evidence that Appellant knew Knox was hiding in the ceiling of his mother's home, a few feet above where police accidentally arrested Appellant because they believed he was Knox. Appellant's final issue merits no relief.

The relevant statute regarding hindering apprehension or prosecution provides:

### § 5105. Hindering apprehension or prosecution

**(a) Offense defined.--**A person commits an offense if, with intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or Accelerated Rehabilitative Disposition, he:

(1) harbors or conceals the other;

(2) provides or aids in providing a weapon, transportation, disguise or other means of avoiding apprehension or effecting escape;

(3) conceals or destroys evidence of the crime, or tampers with a witness, informant, document or other source of information, regardless of its admissibility in evidence;

(4) warns the other of impending discovery or apprehension, except that this paragraph does not apply to a warning given in connection with an effort to bring another into compliance with law; or

(5) provides false information to a law enforcement officer.

18 Pa.C.S. § 5105.

In **Commonwealth v. Haynes**, 116 A.3d 640, 657 (Pa.Super.2015), *appeal denied,* 125 A.3d 1199 (Pa.2015), this Court held that evidence of a defendant giving shelter to a fugitive for one night was sufficient to sustain the jury's finding of hindering apprehension.

Here, the Commonwealth presented evidence that Appellant was upstairs in a room in his mother's home when the police came to the door looking for Knox. Someone in that room called down and asked the man who had opened the door not to let the police inside the house, but the police came inside anyway. When the officer entered the room, he saw scuff

marks on the wall, leading up toward the ceiling, where a ceiling tile was out of place. He arrested Appellant, calling him "Knox," and Appellant did not correct him or tell the officer that Knox was in the ceiling. The court reasonably inferred that Appellant was aware Knox was hiding in the ceiling from the evidence that both Knox and Appellant were in Appellant's mother's home, Appellant was aware police were searching for Knox, and there were scuffmarks on the walls leading up toward a displaced ceiling tile.

Although Appellant did not affirmatively lie to police and stated his true name when questioned, like the appellant in **Haynes**, Appellant concealed Knox's whereabouts so that he would not be arrested, and harbored Knox. Although Appellant contends that he was not charged with "harboring" Knox, the statute specifically states that one is guilty of hindering apprehension if one conceals *or* harbors another. Here, there was sufficient evidence for the court to conclude that Appellant concealed Knox.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2016

- 18 -