J-S34015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MICHAEL ACOSTA | |
| Appellant | No. 159 EDA 2016 |

Appeal from the Judgment of Sentence December 18, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0001322-2015
CP-51-CR-0001323-2015
CP-51-CR-0001324-2015

BEFORE: BOWES, SOLANO, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                              **FILED JUNE 06, 2017**

Michael Acosta appeals from the judgment of sentence of eleven to twenty-two years incarceration, imposed after a jury found him guilty of two counts of aggravated assault, and one count each of firearms not to be carried without a license, carrying a firearm in public in Philadelphia, person not to possess a firearm, intimidation, and conspiracy. We affirm.

During the evening of October 25, 2014, Angel Pagan met his then-girlfriend, Tiffany Leach, at her residence. Ms. Leach entered Mr. Pagan's car, and they drove away. Within minutes, the two began to argue, and Ms. Leach asked Mr. Pagan to take her home. Mr. Pagan complied. As they approached her house, Ms. Leach observed a person squatting behind a car

_____
* Retired Senior Judge specially assigned to the Superior Court.

on the sidewalk across from her home. Ms. Leach recognized the person as her former boyfriend, Appellant.

As Ms. Leach turned toward Mr. Pagan to indicate that Appellant was on the sidewalk, Appellant stood and fired a weapon at Mr. Pagan's car. Mr. Pagan immediately placed his car in reverse and attempted to flee. Appellant fired a second shot at the vehicle as it escaped. Neither person was injured; however, Mr. Pagan's vehicle was damaged by a single bullet hole in the driver's side door. Ms. Leach and Mr. Pagan fled to his father's house, which was located nearby. As they arrived, Ms. Leach received a telephone call from her mother, who was inside Ms. Leach's residence at the time of the shooting, indicating that the police had been summoned and that they should return to provide a statement. Subsequently, Ms. Leach and Mr. Pagan gave the police reports identifying Appellant as their attacker.

The following day, Appellant and an unidentified male approached Mr. Pagan at his place of employment. Appellant confronted Mr. Pagan, and the other individual threatened him. After the encounter, Mr. Pagan notified police and filed a report. Based on the foregoing, the Commonwealth charged Appellant with the aforementioned offenses. Following a jury trial, Appellant was convicted on all counts and the trial court imposed a sentence of eleven to twenty-two years incarceration. Appellant filed a timely notice of appeal and complied with the trial court's order to file a Rule 1925(b)

concise statement of errors complained of on appeal. The court filed its Rule 1925(a) opinion. This matter is now ready for our review.

Appellant raises three questions for our consideration:

1. Was not the evidence insufficient as a matter of law to prove that [Appellant] violated 18 Pa.C.S. § 6106, firearms not to be carried without a license, where [Appellant] came onto the street firing a gun but there was no evidence that he carried the gun concealed on his person?

2. Was not the evidence insufficient as a matter of law to convict [Appellant] of intimidation of a witness where the evidence established only that [Appellant's] intent was to induce [Mr. Pagan] to not seek retribution after [Appellant] fired a gun at [him]?

3. Was not the evidence insufficient to convict [Appellant] of conspiracy since evidence was absent that [Appellant] entered into an agreement with another with the intent of inducing [Mr. Pagan] to not involve law enforcement after [Appellant] fired a gun at [him]?

Appellant's brief at 3.

As each of Appellant's issues challenge the sufficiency of the evidence against him, we apply the following standard of review:

> [W]e examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

*Commonwealth v. Lloyd*, 151 A.3d 662, 664 (Pa.Super. 2016).

Appellant first asserts that there was insufficient evidence to convict him of firearms not to be carried without a license. That sections reads, in pertinent part:

(a) Offense defined.—

    (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106(a)(1).

Appellant's argument in this regard is straightforward. He concedes that he carried a firearm in a place other than an "abode or place of business" and that he did so without a license. Appellant's brief at 12. Nevertheless, he maintains that the evidence did not prove that he concealed the weapon. Appellant contends that neither Ms. Leach nor Mr. Pagan saw him draw the weapon from a place of concealment, and thus, the Commonwealth did not carry its burden of proof. We disagree.

Instantly, Ms. Leach testified that, as she returned to her house with Mr. Pagan, she observed Appellant "slouching down behind a car." N.T. 8/26/15, at 65. She averred that she did not see a gun in his hand, but after turning toward Mr. Pagan to state that Appellant was across the street, she heard a gunshot followed by a second gunshot. *Id*. at 66-67. Mr. Pagan echoed Ms. Leach, testifying that they encountered Appellant "ducked

behind a car." *Id*. at 33. He asserted that he did not see Appellant carrying a gun, but only witnessed the "flash of a gun," as Appellant opened fire. *Id*. at 37-38.

We find, when viewing the evidence in the light most favorable to the Commonwealth as verdict winner, that the jury was free to infer that Appellant concealed the weapon as he waited for Ms. Leach to return home. Neither witness observed Appellant holding a firearm as he lay in wait behind the car near Ms. Leach's house. However, it is undisputed that Appellant fired two bullets at the vehicle occupied by the victims. Whether Appellant concealed the firearm was a question of fact, and thus, we find that the jury could have reasonably believed that Appellant concealed the weapon on or about his person immediately prior to initiating his attack. Hence, no relief is due.

As Appellant's second and third issues are intertwined, we consider them together. Appellant challenges the sufficiency of the evidence supporting his convictions for intimidation and conspiracy to commit intimidation. In relevant part, 18 Pa.C.S. § 4952, Intimidation, provides:

> (a)    Offense defined.—A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> . . . .

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

. . . .

(5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

(6) Absent himself from any proceeding or investigation to which he has been legally summoned.

18 Pa.C.S. § 4952(a). Moreover,

[A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary *mens rea*, "attempts" to intimidate a witness or victim …. The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice …. The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa.Super. 2016) (citation omitted).

As it relates to Appellant's criminal conspiracy conviction,

(a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> . . . .
>
> (e) Overt act.--No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903 (a) and (e). Therefore, to sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person, (2) with a shared criminal intent, and (3) and performed an overt act in furtherance of the conspiracy. *Commonwealth v. Bricker*, 992 A.2d 1008, 1017 (Pa.Super. 2005). Generally, proof of a conspiracy is established through circumstantial evidence. *Commonwealth v. Vargas*, 108 A.3d 858, 873 (Pa.Super. 2014) (*en banc*) (stating, "Proof of a conspiracy is almost always extracted from circumstantial evidence.").

Appellant's convictions for intimidation and conspiracy stem from the confrontation he had at Mr. Pagan's place of employment the day after the shooting. Mr. Pagan described the incident as follows:

> Mr. Pagan: I was taking care of customers as usual. Around 3:00 or 4:00, [Appellant] showed up with somebody. [Appellant] said, everything is squashed and then somebody else stepped up with – whoever [Appellant] was with came up and said, [e]verything better be squashed or there's going to be war.

N.T. Trial, 8/26/15, at 21.  On cross-examination, Mr. Pagan further explained the encounter:

> Prosecutor:  And what [Appellant] asked you . . . [i]s everything done?  Are we done?  That's what he says to you, right?
>
> Mr. Pagan:  Yes.
>
> Prosecutor:  When that happened at first the other guy is kind of hanging back?
>
> Mr. Pagan:  For a moment, yeah.
>
> . . . .
>
> Prosecutor:  And then eventually the other guy steps up, right?
>
> Mr. Pagan:  Yes.
>
> Prosecutor:  What you said earlier is that he says, [e]verything better be squashed or there's going to be war, right?
>
> Mr. Pagan:  The other guy said it, yes.
>
> Prosecutor:  What he actually said was, [e]verything better be squashed because if anything happened to my little brother, it's going to be war.  That's what he says, right?
>
> Mr. Pagan:  Something like that.

*Id*. at 44-45.

Appellant contends that when he told Mr. Pagan, "Everything is squashed," he did not intend "to either keep [Mr. Pagan] from involving law enforcement, or silence Mr. Pagan, if the police were already involved." Appellant's brief at 19.  He explains that the phrase "Everything is squashed" could be defined as "to put an end to."  *Id*.   Appellant suggests that his

statement to Mr. Pagan was merely meant to signal to him that Appellant "considered the incident to be over and [that] he did not want Mr. Pagan to seek retribution or retaliation." *Id*. at 19-20. He maintains that, even if the finder-of-fact did not accept this meaning, the phrase was vague, and, therefore, the Commonwealth did not prove that Appellant intended to intimidate Mr. Pagan or interfere with the administration of justice. Moreover, since there was insufficient evidence that Appellant intimidated Mr. Pagan, Appellant asserts that the Commonwealth did not establish a conspiracy to intimidate Mr. Pagan.

We observe that Appellant's argument ignores our standard of review. We are not tasked with evaluating whether another reasonable interpretation of Appellant's conduct existed. Rather, we consider whether, when viewed in the light most favorable to the Commonwealth as verdict winner, the finder-of-fact could reasonably believe that Appellant attempted to intimidate Mr. Pagan in concert with another. *Lloyd*, *supra*; *Beasley*, *supra*. We find that the Commonwealth did proffer sufficient evidence to carry that burden.

Here, the Commonwealth established that Appellant sought out his victim at his place of business the day after the event in question. Appellant, and his cohort, questioned and threatened Mr. Pagan. The jury could have reasonably inferred that a person in Mr. Pagan's position would interpret Appellant's presence at his work shortly after the commission of

the crime, and his accomplice's hostile statements, as intended to deter Mr. Pagan from providing information to the authorities or appearing at future proceedings. 18 Pa.C.S. § 4952(a). Further, evidence tending to show that Appellant arrived at Mr. Pagan's business together with another person, and that both individuals made aggressive statements to Mr. Pagan, was sufficient to establish that Appellant agreed with the unidentified male to intimidate Mr. Pagan, and thereafter, committed a number of overt acts in furtherance of that goal. Thus, Appellant's claims fail.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2017