J-A12004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY CHARLES GADLEY | : | No. 1212 WDA 2021 |

Appeal from the Order Entered September 15, 2021
In the Court of Common Pleas of Clarion County
Criminal Division at CP-16-CR-0000211-2021

BEFORE:   MURRAY, J., McCAFFERY, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED: MAY 20, 2022**

The Commonwealth of Pennsylvania appeals from the order granting the omnibus pretrial motion for *habeas corpus* relief filed by Jeffrey Charles Gadley (Gadley or Defendant), and dismissing the two charges of terroristic threats brought against Gadley.[1]  ***See*** 18 Pa.C.S.A. § 2706(a)(1).  We affirm.

The trial court summarized the underlying facts as follows:

> At the [June 15, 2021, preliminary] hearing, the Defendant's mother, Melody Blair (hereinafter "Ms. Blair") testified that on the night of May 29, 2021, the Defendant and his minor daughter (hereafter M.[]) were present at their shared residence, along with the Defendant's minor brother (hereinafter T.[]). [N.T., 6/15/21,] at 7-11.  Ms. Blair stated that she reminded the Defendant's daughter to tell the Defendant that her preschool

---

* Retired Senior Judge assigned to the Superior Court.

[1] "[T]he Commonwealth may appeal from an order discharging a defendant upon a writ of *habeas corpus*[.]"  ***Commonwealth v. Hess***, 414 A.2d 1043, 1047 (Pa. 1980) (emphasis omitted).

graduation was coming up on June 7. *Id.* at 7. Ms. Blair testified that at this time the Defendant stated, "I'm not going to let that happen. [M.] and I will be out of here by Monday. I'm not letting that happen." *Id.* Ms. Blair further testified that after approximately fifteen (15) to twenty (20) minutes, "[M.] went back to my room and I finished what I needed to do for the night, and that's when [the Defendant] made the comment that he was going to kill Alicia . . . and at one point he said he was going to shoot her." *Id.* at 7-8, 15. Ms. Blair later clarified that Alicia Zabelsky (hereinafter Ms. Zabelsky") is M.[]'s mother. She also said that the Defendant did not make any communications specifically to Ms. Zabelsky or any other individuals, except [Ms. Blair]. *Id.* at 11, 19. Ms. Blair also clarified that the Defendant did not state he was going to go to Ms. Zabelsky's [residence] that same night or provide any specific time he anticipated on carrying out his threat. *Id.* at 16. Ms. Blair testified that after a period of time, she went to her bedroom where the [D]efendant followed her and wanted the keys to her vehicle to take M.[] from the residence. *Id.* at 9, 18. Ms. Blair stated she then had T.[] call her oldest son, Josh, to come to the residence and defuse the situation. *Id.* at 18-19. Ms. Blair testified that once Josh was contacted by T.[], he contacted the police. *Id.* at 19.

Trooper Brian Tanner (hereinafter "Trooper Tanner") of the Pennsylvania State Police responded to the residence[.] Trooper Tanner testified that when he initially questioned the Defendant outside of his residence, he denied stating he was going to kill Ms. Zabelsky. *Id.* at 22. However, Trooper Tanner stated upon transferring the Defendant to the Clarion County Jail, the Defendant made comments regarding Ms. Zabelsky's boyfriend to him. *Id.* at 23. Specifically, Trooper Tanner testified that "[the Defendant] made comments such as, 'This might cost me prison time, but it will cost him his life. They're going to kill me before they take my little girl from me.'" *Id.* at 23. Trooper Tanner stated that the Defendant was asked, "'Were you talking about the boyfriend of [M.'s] mother?' and he [replied], 'Yes.'" *Id.* at 23.

Trial Court Opinion, 9/15/21, at 1-3.

The Commonwealth charged Gadley with two counts of misdemeanor terroristic threats. In response, Gadley filed an omnibus pretrial motion

requesting *habeas corpus* relief. Gadley claimed the Commonwealth failed to present *prima facia* evidence to establish terroristic threats. Omnibus Pretrial Motion, 7/23/21, at ¶ 13. Gadley emphasized that the threats were never communicated to Ms. Zabelsky or her boyfriend. *Id.* ¶¶ 9, 11. The trial court held a hearing on Gadley's motion, and admitted the transcript from the preliminary hearing into evidence. Thereafter, the trial court granted Gadley's motion and dismissed the charges. Trial Court Order, 9/15/21. The Commonwealth timely appealed. Both the Commonwealth and trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents one question for our review:

Did the trial court err [in] finding the Commonwealth failed to prove a *prima facie* case on both counts of terroristic treats where there is no dispute the threat was communicated but not directly delivered to the victims?

Commonwealth Brief at 4.[2]

We review a decision to grant pre-trial *habeas corpus* relief "by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth." *Commonwealth v. Dantzler*, 135 A.3d 1109, 1111 (Pa. Super. 2016) (*en banc*).

[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime. Hence, we are not bound by the legal determinations of the trial court . . .

---

[2] Gadley has not filed an appellee brief.

A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case. To demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein. To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Id.* at 1112 (citations and quotation marks omitted).

A person commits terroristic threats "if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. § 2706(a)(1). For a defendant to be convicted of terroristic threats,

[n]either the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense. Rather, **the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security**.

*Commonwealth v. Beasley*, 138 A.3d 39, 46 (Pa. Super. 2016) (citations and quotation marks omitted, emphasis added). "The purpose of this section is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended . . . to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.A. § 2706, cmt. Further, "the term, 'communicates' . . . contemplates that the threat be received." *Beasley*, 138 A.3d at 47 (citation omitted).

The Commonwealth argues it presented *prima facie* evidence of both counts of terroristic threats. Commonwealth Brief at 8. Relying on this Court's decisions in *Beasley*, *supra* and *Commonwealth v. Kelley*, 664 A.2d 123,

- 4 -

127 (Pa. Super. 1995), the Commonwealth claims Gadley's threats "need not have been communicated directly in order to satisfy the communication requirement." Commonwealth Brief at 8-9. According to the Commonwealth, "it is clear [Gadley's] statements were communicated to his mother and daughter. [The Commonwealth] avers that those statements corroborated an intent to terrorize another." *Id.* at 10. The Commonwealth further asserts: "It is [of] no consequence that the individuals about whom the threats were made heard them—as such a requirement is not part of the enumerated statutory elements." *Id.* at 10-11. We disagree.

In **Beasley**, a police officer accessed the defendant's YouTube rap music videos from links on the defendant's Facebook page. **Beasley**, 138 A.3d at 42. One video, entitled "Fuck the Police," showed pictures of the defendant and another man, and referenced two police officers by name. *Id.* The lyrics stated the defendant was armed and threatened the two officers. *See id.* at 42-43 (lyrics named the officers and stated, *inter alia*, "your shift over at three and I'm a fuck up where you sleep"; "I got my glock and best believe dog gonna bring the pump out, and I'm hittin your chest. Don't tell me stop cause I'm resisting arrest"; and "like Popl[aw]ski,[3] I'm strap nasty." (footnote added)). The lyrics also stated: "My momma told me not to put this on C.D.,

---

[3] The reference was to Richard Poplawski, who opened fire and killed three Pittsburgh police officers. **See Commonwealth v. Poplawski**, 130 A.3d 697, 708 (Pa. 2015).

but I'm gonna make this fuckin city believe me, so nigga turn me up." ***Id.*** at 43. In concluding the evidence established the crime of terroristic threats, this Court reasoned:

> The rap video specifically threatened to kill [the named officers] "with a glock." We need not ponder whether deciding to broadcast songs or linking YouTube videos to one's Facebook page generally indicates intent to communicate, because Appellant stated his intent by saying in his rap song: "My momma told me not to put this on C.D., but I'm gonna make this fuckin city believe me, so nigga turn me up." Appellant chose not to listen to his mother because he wanted [the named officers] to hear his message, **and they did**. He successfully and intentionally communicated his threat.

***Id.*** at 47 (emphasis added).

In ***Kelley***, the defendant called a law firm and told the secretary he was going to kill a specific attorney at the firm, as well as a specific judge. ***Kelley***, 664 A.2d at 125. The secretary communicated the threat to the attorney and judge. ***Id.*** at 127. In deeming the evidence sufficient to sustain the defendant's conviction of terroristic threats, this Court explained:

> [T]he evidence on the record established that [a]ppellant made a threat to commit a crime of violence and that he communicated such threat to [the named attorney's] secretary, when she asked if she could give [the attorney] a message. **This threat was in turn communicated to the intended recipients**, [the attorney] and [the named judge]. Accordingly, [a]ppellant's conduct met the requirement that the threat be communicated to the victims.

***Id.*** (emphasis added).

In both ***Beasley*** and ***Kelley***, the evidence established that the threats were communicated to the intended victims. Here, by contrast, the record

discloses no direct or indirect communication of Gadley's threats to Ms. Zabelsky or her boyfriend. As the trial court explained:

> In the case at hand, the Defendant communicated to his mother, Ms. Blair, that he was going to kill the mother of his child, Ms. Zabelsky. However, according to the testimony at the preliminary hearing, Ms. Zabelsky was not at the residence while these threats were made. Additionally, no evidence was provided by the Commonwealth that the Defendant communicated or intended his threats be communicated by Ms. Blair or a separate third person to Ms. Zabelsky. The Defendant also communicated a second threat to Trooper Tanner that "this might cost me prison time, but will cost him his life" in regard to Ms. Zabelsky's boyfriend. This threat was being made while the Defendant was being transported to the Clarion County Jail. Ms. Zabelsky's boyfriend was not present when this threat was made, nor was evidence presented by the Commonwealth that the Defendant communicated or intended this threat be communicated by Trooper Tanner or a separate third person to Ms. Zabelsky's boyfriend. Thus, there is insufficient *prima facie* evidence to support the necessary elements for each count of Terroristic Threats . . . as no evidence was presented that Ms. Zabelsky or her boyfriend received the threats made by the Defendant.

Trial Court Opinion, 9/15/21, at 4-5 (record citations omitted).

Upon review, we discern no error by the trial court in granting *habeas corpus* relief. We therefore affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/20/2022

- 7 -