J-S45006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN A DUQUE | : | |
| | : | |
| Appellant | : | No. 415 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 20, 2025
In the Court of Common Pleas of Columbia County
Criminal Division at No: CP-19-CR-0000782-2022

BEFORE: STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY STABILE, J.:              **FILED: APRIL 1, 2026**

Appellant, Juan A. Duque, appeals from the judgment of sentence imposed on February 20, 2025, by the Court of Common Pleas of Columbia County.  He challenges the sufficiency of the evidence to support his intimidation of victim or witness conviction.  Upon review, we affirm.

This case stems from a juvenile proceeding wherein the victim, A.G., was subpoenaed to testify against her minor son, J.D,[1] who was charged with assaulting A.G.  N.T. Jury Trial, 1/9/25, at 56, 88-89.  The juvenile proceeding was scheduled for January 4, 2022. ***Id.*** at 88.  The morning of the scheduled hearing, A.G. sent an email to Officer Melanie Beck of the Bloomsburg police

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] As will become clear in this memorandum, the Appellant, father, and the juvenile, son, share the same name.  Herein, "Appellant" shall refer to the father and "J.D." will refer to the juvenile son.

department that she would not be attending the hearing despite the subpoena because she was scared after seeing a Facebook post purportedly written by Appellant on January 3, 2022. *Id.* at 38-40. The Facebook post read, verbatim:

> leta c my name come out your bitch ass mouth or your bitch ass n****s. on my mom. ili give you that 150 to rember ever time you look in the mirror. am not scrad to go buci u already have my son in there ilo see wall in a couple of hours

*Id.* at 100; *see also* Commonwealth's Exhibit 6. Because A.G. had blocked Appellant's Facebook account, she did not see the post via Facebook. *Id.* at 117. Instead, Appellant's sister took a screenshot of the post and sent it via text message to A.G. *Id.* at 92.

A.G. testified that she has known Appellant for approximately 26 years and they were married for eight to nine years before divorcing in 2018 or 2019. *Id.* at 96-97. She testified that she is familiar with how Appellant speaks, his typing skills and errors he makes, and his use of slang terms. *Id.* at 98-100, 106. As such, she interpreted the post to mean: "If I went to court and said anything about [Appellant], that he's swearing on his mom that he's going to cut my face, this way every time I look in the mirror I remember him." *Id.* at 110. Specifically, she interpreted the slang and spelling errors as follows:

1. **"leta c my name come out of your bitch ass mouth or your bitch ass n****s"**: Victim explained that this meant that . . . Victim should not say anything about "Juan Duque," which is both Appellant's and J.D.'s name[, their minor son that A.G. was subpoenaed to testify against].

- 2 -

2. **"on my mom"**: The threat is sworn to by [Appellant] upon his mother's grave

3. **"ili give you that 150 to rember ever time your look in the mirror"**: This is a reference to the "Joker" movie, wherein the Joker's cheek was slit from ear to mouth. It is generally regarded as cutting a person's cheek and is intended to inflict terror.

4. **"am not scrad to go buci u already have my son in there"**: This refers to the fact that [Appellant] had already been in jail, that he was not afraid of going back to jail as a result of harming Victim and that the son of the Victim and [Appellant] (son [B.G.]) was already in jail. On cross examination, Victim testified that "buci" is a misspelling by [Appellant] of the word "back."

5. **"ilo see wall in a couple of hours"**: This was a reference to [Appellant] seeing "ya'll" (the Victim) in a couple hours at the juvenile hearing . . . if she appeared.

Trial Court Opinion, 7/9/25, at 5-6 (emphasis in the original).

A.G. received a screenshot of the Facebook post by 7:00 a.m. on the morning of the scheduled hearing. N.T. Jury Trial, 1/9/25, at 121. A.G. was mortified when she read the post because of

[a]ll the years of past abuse, all the years of getting into arguments and him being drunk and holding me down on beds with swords and knives to my throat or cutting the power off in the house. And I mean the main power, the main switch, and chasing me around the house in the pitch dark with darts, not toy darts, real darts, throwing them at me or throwing knives at me. All that was done in private. He would never do any of that for the public to see, it was all done in private. **For him to be so comfortable to get on Facebook and start showing the world who he really was showed how much his behavior was escalating**.

\* \* \* \*

- 3 -

> . . . The last time I was punched in the face by [Appellant] was just a couple months prior to all this. It was the day after my birthday, two days before my son's birthday.

*Id.* at 111-12 (emphasis added). As a result, A.G. informed Officer Beck that she would not attend nor testify against J.D. during the scheduled hearing because the Facebook post scared her. *Id.* at 93-94.

A.G. provided the screenshot to Officer Beck, who commenced an investigation. *Id.* at 37. The screenshot included a profile picture of the Facebook account that made the post, which appeared to be a photograph of Appellant. *Id.* at 44-46. Officer Beck secured a search warrant seeking records from Facebook relating to the account that made the post. *Id.* at 47-48. In response, Facebook sent Officer Beck a packet of information identifying Appellant as the account owner – the registered email address was duquejuan215@gmail.com; the username associated with the account was Juan.Duque.79069; and Appellant used both phone numbers registered to the account. *Id.* at 51-52, 95.

Thereafter, Appellant was charged with one count of intimidation of victim or witness. A jury found Appellant guilty, and sentencing was deferred for the completion of a presentence investigation. On February 20, 2025, Appellant was sentenced to a term of 18 to 84 months' imprisonment. Appellant filed a post-sentence motion, which was denied by the trial court. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. He raises a sole issue for our review:

> Was the evidence presented at trial sufficient as a matter of law to support Appellant's conviction for intimidation of witness or victim as defined by 18 Pa.C.S.A. § 4952(a)(3).

Appellant's Brief, at 4.[2]

On appeal, Appellant contends that the Commonwealth failed to present any evidence that he intentionally or knowingly intimidated or attempted to intimidate the victim. **See** Appellant's Brief, at 8-16. Specifically, Appellant argues that because the victim blocked his Facebook, he did not know that she would see the post. **Id.** at 10. He further argues:

> [T]he contents of the Facebook post do not threaten or request [A.G.] to withhold testimony related to their son's court proceeding. While somewhat difficult to interpret, the Facebook post only references Appellant's name coming out of someone's mouth – it does not mention his son's name, who was the subject of the juvenile court proceeding the following day. Stating that if [Appellant's] name was mentioned at the juvenile proceeding is insufficient to establish intimidation of [A.G.]

**Id.** at 12.

For a challenge to the sufficiency of the evidence, our standard of review is:

> whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to

---

[2] We note that the grading of the offense was a felony of the third degree, which required the Commonwealth to prove that Appellant threatened to employ force or violence upon A.G. **See** 18 Pa.C.S.A. § 4952(b). While Appellant's brief noted that there were three elements of the offense, **see** Appellant's Brief at 8, he failed to develop any argument relative to the additional element increasing the grading of the offense; therefore, it is waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. Super. 2009) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Smith*, 206 A.3d 551, 557 (Pa. Super. 2019) (citation omitted).

Appellant was convicted of subsection 4952(a)(3), which reads:

A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to . . . [w]ithhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(3). The Commonwealth must prove two elements beyond a reasonable doubt: (1) that a defendant had the intent or knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, and, (2) that he intimidated or attempted to intimidate a witness or victim to withhold testimony or information relating to a crime. *See Commonwealth v. Baker*, 313 A.3d 1112, 1117 (Pa. Super. 2024). Further, we observe:

> [A]ctual intimidation of a witness is not an essential element of the crime. The crime is committed if one, with the necessary *mens rea*, "*attempts*" to intimidate a witness or victim....The trier of the facts, therefore, could find that appellant attempted to intimidate his accuser and that he did so intending or, at least, having knowledge that his conduct was likely to, impede, impair or interfere with the administration of criminal justice.... The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence.

*Commonwealth v. Collington*, 615 A.2d 769, 770 (Pa. 1992) (emphasis in the original).

A person acts intentionally when "it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1). A person acts knowingly when "he is aware that his conduct is of that nature or that such circumstances exist" and "he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2). Moreover, regarding intimidation, our Supreme Court observed:

> Clearly, intimidation may be accomplished with no words at all, for a mere look or posture can bully, threaten, coerce, frighten, or intimidate beyond question. ***See, e.g.***, Clint Eastwood. It is equally true that an offer of benefit can be presented in such a Machiavellian manner as to contain an unarticulated act of intimidation. ***See, e.g.***, the Godfather (Paramount Pictures 1972) ("I'm gonna make him an offer he can't refuse."). Indeed, one need not go to the movies to understand that people may purposely intimidate in any number of ways, without manifesting bullying or fearsome words, and if they do so with the requisite *mens rea*, the crime is made out.

*Commonwealth v. Doughty*, 126 A.3d 951, 957 (Pa. 2015).

In finding sufficient evidence, the trial court explained:

> As to the first element, evidence that [Appellant] intimidated Victim into withholding testimony relating to the commission of a

crime from a law enforcement officer, prosecution official or a judge included the [Facebook] post, the identification that the post was made by [Appellant] with the specific intent to intimidate Victim into not testifying against J.D. Victim's interpretation of [Appellant's] usage of language was properly founded upon a 26 year relationship with [Appellant] and an 8-9 year marriage. J.D.'s name is the same as [Appellant's]. J.D.'s juvenile hearing was in front of a judge. In fact, because of the fear and intimidation inflicted upon Victim by [Appellant] through the post, Victim testified that she did withhold her testimony against J.D.

As to the second element, there was enough evidence, direct and circumstantial, to permit the jury to conclude that [Appellant] made the post with the intent to, or with the knowledge that his conduct would obstruct, impede, impair, prevent or interference with the administration of criminal justice, *i.e.*, subjugate the Victim into not testifying. The direct evidence was the "150" threat, stating that the punishment would be inflicted if Victim let the name of [Appellant] (and J.D.) come out of her mouth in a couple of hours. Circumstantial evidence was that [Appellant] was not "scrad" (scared) to go back to jail for injuring Victim, partially because Victim's and [Appellant's] son [B.G.] was housed there. . . . There is no explanation for [Appellant making the Facebook post] except that he intended to prevent Victim from testifying.

Trial Court Opinion, 7/9/25, at 7-8.

Our review of the record supports the conclusion reached by the trial court. Appellant made a Facebook post the night before a juvenile proceeding wherein the Victim was supposed to testify against their son. The post warned someone to not say his name – also the name of the son whom A.G. was supposed to testify against – and that he would see the person in a couple of hours. Appellant's sister read the Facebook post and believed it was a threat targeted at A.G.; therefore, Appellant's sister notified A.G. of the threating post. Even without A.G.'s interpretation of the Facebook post, Appellant's sister believed his post was a direct threat to A.G. if she testified during the

son's juvenile hearing. Thus, we agree with the trial court that there is sufficient evidence supporting Appellant's conviction.

Additionally, we note that, in a similar fact pattern, a panel of this Court concluded there was sufficient evidence to support an intimidation of victim or witness conviction where the person to whom the threat was made did not see the threat first-hand. *See, e.g., Commonwealth v. Beasley*, 138 A.3d 39 (Pa. Super. 2016).

Beasley posted a rap video to YouTube in which he threatened two officers not to testify against him at trial. *Id.* at 48. Neither of the officers specifically named in the video (Officers Michael Kosko and Daniel Zeltner) saw the video first-hand. *Id.* at 42. Rather, a third officer, Officer Aaron Spangler, viewed Beasley's Facebook page which had "several links to YouTube pages that showed rap music videos" made by Beasley and his co-conspirator. *Id.* Officer Spangler then sent the video to Officers Kosko and Zeltner, who in turn charged Beasley with intimidation of a victim or witness. *Id.*

On appeal, Beasley argued that the evidence was insufficient to support his intimidation of victim or witness conviction because the Commonwealth failed to prove the video was posted with the requisite intent to intimidate the officers. *Id.* at 47. This Court, citing *Collington*, concluded that there "was sufficient evidence from which the [fact-finder] could infer that [Beasley] posted the video in an attempt to interfere with the administration of the justice system by convincing the police to withhold testimony[.]" *Id.* at 48.

Stated another way, the evidence showed that Beasley posted a rap video threatening to kill two officers if they testified against him regarding his pending criminal charges. That was sufficient to prove his intent. There was no requirement that the person to whom the threat was made to view or hear the threat first-hand in order for a conviction to stand.

Similarly, in the instant case, the Commonwealth presented sufficient evidence from which the jury could infer Appellant made the Facebook post with the intent to interfere with the administration of the justice system by convincing A.G. to withhold testimony. Appellant made a Facebook post threating to harm someone if they "said his name" during a court proceeding scheduled for the following day. Appellant's sister saw the post and understood the post to be a threat against A.G. As in **Beasley**, the Facebook post itself was sufficient to prove Appellant's intent. Whether A.G. viewed the post first-hand is irrelevant to our intent analysis. **See Beasley**, **supra**.

Accordingly, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for intimidation of victim or witness.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/1/2026