J-S09012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEVEN PHILIP MARTI, | : | |
| | : | No. 720 MDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence February 23, 2017
in the Court of Common Pleas of York County
Criminal Division at No.:  CP-67-CR-0004635-2015

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                     **FILED MARCH 26, 2018**

Appellant, Steven Philip Marti, appeals from the judgment of sentence imposed after his jury conviction of simple assault and intimidation of a witness.[1, 2]  Counsel has filed a petition to withdraw pursuant to ***Anders v. California***, 386 U.S. 738 (1967) and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the judgment of sentence and grant counsel's petition.

_____

 *Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2701(a)(1) and 4952(a)(2), respectively.

[2] The trial court also convicted Appellant of summary harassment.  **See** 18 Pa.C.S.A. § 2709(a)(1).  No sentence was imposed on this conviction.  (**See** N.T. Sentencing, 2/23/17, at 34).

We take the following factual and procedural background from our independent review of the certified record. Trial in this matter commenced on January 3, 2017. At trial, Katelyn Lynch, Appellant's former girlfriend, testified that, on the night of the subject incident, June 16, 2015, she and Appellant were drinking at a bar in Hellam Township. Although the two argued while at the establishment, and Lynch "had a really bad feeling," they left together to go home when it closed. (N.T. Trial, 1/04/17, at 113; *see id.* at 111-12).

On arriving home, the argument resumed, and Appellant stated he would stay at his mother's. (*See id.* at 116). He began packing, but then "everything started to escalate." (*Id.*). He "got in [Lynch's] face[,]" stating he would not leave until they talked. (*Id.*; *see id.* at 117). When she replied she did not feel like talking, Appellant grabbed the apartment keys from a lanyard around Lynch's neck, threw her cell phone, and shoved her onto the couch. (*See id.* at 117-18). Lynch pulled her knees up, bringing them to her chest, as Appellant started to come at her. (*See id.* at 119). Lynch could feel Appellant's fingertips on her neck, but before he could go any further, their dog bit him in the leg, allowing Ms. Lynch the opportunity to get up and attempt to leave. (*See id.* at 121-22). However, before she could escape, Appellant pushed Ms. Lynch into a closet door, breaking it, and causing her to fall into it. (*See id.* at 123-24). As she and Appellant struggled, he hit her in

the back of the head, she fell to the floor, and he punched her in the mouth. (*See id.* at 125-28).

Thereafter, Appellant took Lynch to the bathroom to clean her up so he could inspect her wounds. (*See id.* at 129-30). Lynch repeatedly asked Appellant to call 911 so that she could get medical care for her injuries, but he refused to do so unless she agreed to tell a false version of events. (*See id.* at 130-31). Because she knew it was the only way Appellant would call 911, Ms. Lynch agreed to lie about what had transpired. (*See id.* at 131). Appellant remained in her presence when the police and ambulance crews arrived, and told them his version of the "accident." (*Id.* at 132). Because Appellant rode along in the ambulance on the way to the hospital, Lynch testified she was afraid to tell the medical personnel the truth about what happened. (*See id.* at 133). Once Lynch was in the emergency room and away from Appellant, she revealed what actually transpired. (*See id.* at 134).

Dr. Lorie Piccoli, the emergency room doctor who treated Lynch, observed a laceration to the back of her head, a disruption of her central incisors (teeth pushed in), and swelling of her lips. (*See id.* at 140, 142-44). A CT scan confirmed the injury to Lynch's teeth, and revealed a fracture of her maxilla (the bone above the upper lip). (*See id.* at 144). Dr. Piccoli testified that these injuries result in chronic pain, sensitivity to heat and cold, disfigurement, scarring, and headaches. (*See id.* at 146).

Appellant elected to testify on his own behalf. (*See id.* at 254). According to his version of events, after he and Ms. Lynch left the bar on June 16, 2015, she began punching him in the shoulder on the drive home. (*See id.* at 259). After arriving at the residence, Appellant went inside to get clothes so that he could spend the night at his mother's house. (*See id.* at 260-61). When he tried to leave, Ms. Lynch blocked him from doing so. (*See id.* at 265). Thereafter, Ms. Lynch fell over the dog, hitting her head on the doorknob and a piece of furniture. (*See id.* at 265, 269). Appellant testified that he then voluntarily called 911 so that Ms. Lynch could get medical attention. (*See id.* at 269). On cross-examination, Appellant conceded that, before Lynch kicked him, she was on the couch and he was standing, requiring her to get up, beat him to the front door, and block him from leaving. (*See id.* at 275).

At the conclusion of a trial, the jury convicted Appellant of simple assault and intimidation of a witness, and found him not guilty of aggravated assault.[3] On February 23, 2017, the trial court sentenced Appellant to an aggregate term of not less than fifty-four nor more than 108 months' incarceration. The trial court denied Appellant's post-sentence motion, and he timely appealed.[4]

---

[3] 18 Pa.C.S.A. § 2702(a)(1).

[4] Appellant timely filed his statement of errors complained of on appeal on July 20, 2017, pursuant to the court's order and grant of extensions. *See* Pa.R.A.P. 1925(b). The trial court filed an opinion on November 8, 2017. *See* Pa.R.A.P. 1925(a).

- 4 -

On December 18, 2017, counsel filed a petition for leave to withdraw and an *Anders* brief on the basis that the appeal is frivolous. Appellant has not responded.

Before reaching Appellant's issues, we must consider counsel's request to withdraw. *See Commonwealth v. Lilley*, 978 A.2d 995, 997 (Pa. Super. 2009).

The standard of review for an *Anders* brief is well-settled.

Court-appointed counsel who seek to withdraw from representing an appellant on direct appeal on the basis that the appeal is frivolous must:

(1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) file a brief referring to anything that arguably might support the appeal but which does not resemble a "no-merit" letter or *amicus curiae* brief; and (3) furnish a copy of the brief to the defendant and advise the defendant of his or her right to retain new counsel or raise any additional points that he or she deems worthy of the court's attention.

*Id.* (citations and quotation marks omitted). Further, our Supreme Court ruled in *Santiago*, *supra*, that *Anders* briefs must contain "a discussion of counsel's reasons for believing that the client's appeal is frivolous[.]" *Santiago*, *supra* at 360.

Instantly, counsel's *Anders* brief and application to withdraw comply with the applicable technical requirements and reveal that he has made "a conscientious examination of the record [and] determined that the appeal would be frivolous[.]" *Lilley*, *supra* at 997 (citation omitted). Additionally,

- 5 -

the record establishes that counsel served Appellant with a copy of the **Anders** brief and application to withdraw, and a letter of notice, which advised Appellant of his right to retain new counsel or to proceed *pro se* and raise additional issues to this Court. **See id.**; (**see also** Petition to Withdraw as Counsel, 12/18/17, Exhibit A, at 1). Further, the application and brief cite "to anything that arguably might support the appeal[.]" **Lilley**, **supra** at 997 (citation omitted); (**see also Anders** Brief, at 11-12, 17-25). As noted by our Supreme Court in **Santiago**, the fact that some of counsel's statements arguably support the frivolity of the appeal does not violate the requirements of **Anders**. **See Santiago**, **supra** at 360-61.

Having concluded that counsel's petition and brief comply with the technical **Anders** requirements, we must "conduct [our] own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Lilley**, **supra** at 998 (citation omitted).

The **Anders** brief raises three questions for our review:

I. [Whether t]he trial court erred in grading Appellant's intimidation of witness conviction as a felony when the jury acquitted Appellant of the triggering offense of felony aggravated assault[?]

II. [Whether t]he evidence was insufficient to convict Appellant beyond a reasonable doubt of intimidation of witness because the Commonwealth failed to prove Appellant intended to intimidate the victim into refraining from reporting, or providing false information, about the assault[?]

III.    [Whether t]he evidence was insufficient to convict Appellant beyond a reasonable doubt of simple assault because the Commonwealth failed to rebut Appellant's claim of justification[?]

(**Anders** Brief, at 5).

The standard of review for Appellant's first issue is well-settled:

The proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed. . . . The interpretation of a statute is a pure question of law, and therefore our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Felder**, 75 A.3d 513, 515 (Pa. Super. 2013), *appeal denied*, 85 A.3d 482 (Pa. 2014) (citations omitted).

Section 4952 of the Crimes Code provides, in pertinent part, that the offense of intimidation of a witness or victim "is a felony of the first degree if a felony of the first degree . . . **was charged** in the case in which the actor sought to influence or intimidate a witness or victim as specified in this subsection."  18 Pa.C.S.A. 4952(b)(2) (emphasis added).

Instantly, the Commonwealth charged Appellant with aggravated assault as a felony of the first degree.  (**See** Information, 8/07/15, at 1). Appellant maintains, however, that because the jury acquitted him of aggravated assault, the trial court erred in grading his intimidation of a witness conviction as a felony pursuant to 18 Pa.C.S.A. 4952(b)(2).  (**See** **Anders** Brief, at 17-19).  This issue lacks merit.

In **Felder**, **supra**, "Felder . . . argue[d] that because the jury hung on the aggravated assault charge and it was *nolle prossed* by the Commonwealth

before sentencing, application of subsection 4952(b)(2) was improper[.]

*Felder*, *supra* at 516 (record citation omitted). This Court rejected Felder's

argument, observing:

> A first-degree felony was **charged in this case**, and thus the trial court properly graded Felder's conviction for witness/victim intimidation as a first-degree felony pursuant to subsection 4952(b)(2). Felder's alternative interpretation of this subsection would require us to insert additional language into the statute, namely that the first-degree felony charge "continued to exist in the case at the time of sentencing." Nothing in section 4952(b)(2) suggests that the legislature intended such a result. To the contrary, the statute's focus on the most serious crime charged makes eminent sense, since the relevant charge is the most serious one a criminal defendant attempted to escape by use of intimidation.

*Id.* at 517 (emphasis in original).

Therefore, applying the foregoing reasoning to this case, we conclude

that the trial court properly sentenced Appellant of witness intimidation graded

as a felony of the first degree. *See id.* Appellant's first issue does not merit

relief.

In his second issue, Appellant argues that "the Commonwealth failed to

present sufficient evidence to prove that he intended to intimidate the victim

from reporting or providing false information about the assault." (Appellant's

Brief, at 19; *see id.* at 19-21). This issue does not merit relief.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is

insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. McClellan*, \_\_\_ A.3d \_\_\_, 2018 WL 560762, at \*2 (Pa. Super. filed Jan. 26, 2018) (citation omitted). "Furthermore, the trier of fact . . . is free to believe, all, part, or none of the evidence presented when making credibility determinations. In deciding a sufficiency of the evidence claim, this [C]ourt may not reweigh the evidence and substitute our judgment for that of the fact-finder." *Id.* (citations omitted).

Section 4952(a) of the Crimes Code provides, in pertinent part:

A person commits [the] offense [of intimidation of a witness or victim] if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to . . . [g]ive any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(2). "The crime is committed if one, with the necessary *mens rea*, attempts to intimidate a witness or victim. . . . The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." *Commonwealth v. Beasley*, 138 A.3d 39, 48 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016) (citation, emphasis, and quotation marks omitted).

In the present case, the Commonwealth provided evidence that, after Appellant assaulted Lynch, he would only call for medical assistance if she agreed to lie to authorities by telling them his version of events. From this evidence, the jury could reasonably infer that Appellant intimidated Lynch with the intent that she give false information to authorities. *See id.*; *see also* 18 Pa.C.S.A. § 4952(a)(2). Hence, the evidence was sufficient to support Appellant's conviction of intimidation of a witness or victim. *See McClellan*, *supra* at *2. Appellant's second issue lacks merit.

In his third issue, Appellant maintains that the evidence was insufficient to convict him of simple assault where "the Commonwealth failed to rebut his claim of [j]ustification[.]" (*Anders* Brief, at 21; *see id.* at 21-25). This claim does not merit relief.

Section 505 of the Crimes Code provides, in pertinent part: "The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S.A. § 505(a). "When an accused raises a self-defense claim, the Commonwealth must prove beyond a reasonable doubt that the defendant's acts were not justifiable self-defense." *Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably

believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety. It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat.

*Id.* (citation omitted). "Although the Commonwealth is required to disprove a claim of self-defense . . . a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Houser*, 18 A.3d 1128, 1135 (Pa. 2011), *cert. denied*, 565 U.S. 1247 (2012) (citation omitted).

Here, Appellant testified that Lynch punched him in the shoulder on the way home from the bar, and that he pushed her in response to her pushing and kicking him and blocking his retreat from the residence, a version of events at odds with Lynch's testimony. In assessing credibility, the jury was free to believe, all, part or none of the testimony, and was not required to believe Appellant. *See id.*; *see also McClellan*, *supra*, at *2.

Further, even assuming *arguendo* that Appellant's version of events were true, he admitted that, before Lynch struck him, she had to get up from the couch, beat him to the front door, and block him from leaving. Based on this testimony, the jury could properly find that the Commonwealth established Appellant did not reasonably believe he was in danger of death or serious bodily injury. *See Hammond*, *supra* at 559.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth, it is sufficient to support Appellant's conviction of simple

assault, where the evidence established that he did not act in justifiable self-defense. **See McClellan**, **supra**, at *2. Appellant's third issue lacks merit.

Therefore, based on our own independent review of the record, we conclude that Appellant's claims are "wholly frivolous" and do not merit relief. **Lilley**, **supra** at 998 (citation omitted). Additionally, we find no other non-frivolous issues that would merit relief.

Judgment of sentence affirmed. Counsel's petition to withdraw granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/26/2018