J-S01008-24

2024 PA Super 66

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          : PENNSYLVANIA
                                          :
                                          :
        v.                                :
                                          :
                                          :
JACKSON C. BAKER                          :
                                          :
        Appellant                         : No. 261 MDA 2023

Appeal from the Judgment of Sentence Entered January 17, 2023
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000400-2021

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          : PENNSYLVANIA
                                          :
                                          :
        v.                                :
                                          :
                                          :
JACKSON C. BAKER                          :
                                          :
        Appellant                         : No. 262 MDA 2023

Appeal from the Judgment of Sentence Entered January 17, 2023
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000910-2019

BEFORE:   PANELLA, P.J.E., KUNSELMAN, J., and COLINS, J.*

OPINION BY PANELLA, P.J.E.:                **FILED: APRIL 4, 2024**

Jackson C. Baker brings these direct appeals from the judgments of

sentence entered in the above-captioned matters. Upon careful review, we

affirm.

---

* Retired Senior Judge assigned to the Superior Court.

At trial court docket number CP-14-CR-910-2019, the Commonwealth filed an information on July 11, 2019, charging Baker with rape of a child, involuntary deviate sexual intercourse with a child, unlawful contact with a minor, corruption of minors, and indecent exposure, for conduct occurring on or about January 19, 2019, which included Baker placing his penis inside the mouth of a one-year-old child and masturbating in front of the child. At trial court docket number CP-14-CR-400-2021, the Commonwealth filed an information on April 19, 2021, charging Baker with intimidation of a witness stemming from his contact with S.L., the mother of the victim in docket number CP-14-CR-910-2019, which occurred on January 6, 2021.

On September 27, 2022, at the conclusion of trial, a jury convicted Baker of all crimes charged at both trial court docket numbers. On January 17, 2023, at docket number 910-2019, the trial court sentenced Baker to serve a term of incarceration of twenty to forty years for the rape conviction and a concurrent term of ten to twenty years for the conviction of unlawful contact with a minor. The same day, at docket number 400-2021, for the conviction of intimidation of witnesses, the trial court sentenced Baker to serve a term of incarceration of one to two years, to run concurrently with the sentences imposed at 910-2019. Baker filed timely appeals from both judgments of sentence. In an order filed April 26, 2023, this Court consolidated the appeals *sua sponte*.

Baker submits the following issues for our review:

1. Can Mr. Baker's conviction under 18 Pa.C.S. § 4952, Intimidation of a witness, be sustained without evidence he (1) intended to, and (2) attempted to intimidate a witness?

2. Can Mr. Baker's conviction be sustained when the jury expressed reasonable doubt about the critical date (January 19, 2019) and the Trial Judge instructed that it disregard that doubt, and use any date?

3. Should defense motion(s) for mistrial have been granted when the prosecutor violated a pre-trial order by presenting unrelated and uncharged conduct ordered inadmissible pretrial?

4. Should the defense motion(s) for mistrial have been granted when an ex Children and Youth intake worker was treated as an expert and testified to indications of abuse based upon what she called "gut feelings, hunches and red flags"?

5. Did the Commonwealth impermissibly vouch for credibility of the sole alleged eye witness, Brandon Magusiak, in order to stave off questions raised about his credibility?

Appellant's Brief, at 6-7.

Baker first argues that the Commonwealth failed to present sufficient evidence that he committed the crime of intimidation of a witness. *See* Appellant's Brief, at 20-22. He contends that the witness, S.L., who is his daughter, simply testified "that her father was repeatedly apologizing, crying, and seeking her forgiveness and pity; and offering pecuniary support in the future." *Id*. at 20. Baker posits that the jury "cannot infer 'intimidation' from the mere offer of a pecuniary benefit not to testify." *Id*. at 22. He concludes that the evidence did not establish the necessary elements of the crime.

We analyze arguments challenging the sufficiency of the evidence under the following parameters:

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014) (citations omitted).

The crime of intimidation of witnesses or victims, which is codified at 18 Pa.C.S.A. § 4952, provides the following pertinent definition of the offense:

**(a) OFFENSE DEFINED.--** A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:

\* \* \*

(3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

18 Pa.C.S.A. § 4952(a)(3).

The two elements of this crime are (a) that a defendant had the "intent or ... knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice," and, (b), that he

- 4 -

intimidated or attempted to intimidate a witness or victim to withhold testimony or information relating to a crime. ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016) (citation omitted). Actual intimidation is not required; the Commonwealth may prove an attempt to intimidate. ***See id***. A defendant's intent or knowledge may be shown by circumstantial evidence. ***See id***.

The trial court offered the following apt analysis in reviewing Baker's challenge to the sufficiency of the evidence:

> Here, [Baker] argues the evidence was insufficient for the jury to find him guilty of intimidation of a Witness. This [c]ourt disagrees. At trial, the Commonwealth presented evidence sufficient to show [Baker], in communication with his daughter, [S.L.], attempted to get her to "go back on" or rewrite the statement she had previously given to police to say the events described there in did not happen or she lied. Further testimony from [S.L.] reflected [Baker] asked her either not to come to trial or not to testify against him. The [c]ourt therefore finds there was sufficient evidence to support [Baker's] conviction for Intimidation of a Witness.
>
> Because the evidence was sufficient for the jury to find [Baker] guilty of Intimidation of a Witness, this [c]ourt properly denied [Baker's] motion to dismiss/direct a verdict of not guilty as to the charge for Intimidation of a Witness. Accordingly, no reversible error occurred.

Trial Court Opinion, 5/18/23, at 3-4.

Likewise, our review of the record supports the conclusion reached by the trial court. Baker's daughter, S.L., is the mother of the victim in docket number CP-14-CR-910-2019 and testified at Baker's trial. ***See*** N.T., 9/26/22, at 173-206. During her testimony, the Commonwealth questioned S.L.

regarding a specific incident of contact she had with Baker on January 6, 2021. *See id*. at 192-200. S.L. explained that in the late evening of that day she initiated a Facebook Messenger video chat call with her mother. *See id*. at 193. During the conversation, S.L.'s mother needed to go to the bathroom, and then Baker "picked up the phone and started talking." *Id*. at 194. S.L. indicated that she had not had contact with Baker since the allegations were made, a period she estimate to be three years. *See id*. S.L. stated when Baker picked up the phone, he "started talking to me, trying to get me to – what he had said was, make things right, by removing my statement or adjusting it to where I said that he didn't do what he's accused of." *Id*. When asked about her reaction to Baker picking up the phone, S.L. testified, "I was very shocked, uncomfortable." *Id*. at 195. S.L. noted that as a condition of Baker's bail, he was not to have contact with her. *See id*.

In addition, S.L. explained that during the conversation, Baker was demanding an apology from her, and he indicated that when he was in jail and the news of the incident became public, he was beaten up; moreover, he almost tried to kill himself. *See id*. Also, S.L. testified that Baker offered to help her financially. *See id*. at 196.

Further, S.L. testified that she felt Baker was trying to manipulate her during the video call. *See id*. She stated that "[Baker] was trying to talk to [her] about how [a Commonwealth witness] was lying." *Id*. at 197. S.L. also explained that Baker had asked her to retract her statement to the police,

maintaining that "[h]e had asked me to rewrite it and put in that he was not guilty and that it didn't happen and that I lied in my statement." *Id*. In addition, Baker asked S.L. not to attend the trial or to testify against him. *See id*. at 198. Ultimately, S.L. stated that the conversation with Baker made her feel "very confused and uncomfortable and backed into a corner." *Id*.

Viewing the evidence in the light most favorable to the Commonwealth, we discern no error by the trial court in finding that the evidence was sufficient to support the conviction of intimidation of a witness. In this case, Baker made his statements to S.L. prior to trial and while the trial court had placed conditions on his bail specifying that he was not to have contact with S.L. Furthermore, Baker asked her not to testify and to change her statement that had indicated he was guilty. In doing so, Baker expressed that he had been beaten in jail and considered harming himself. Accordingly, the evidence presented establishes the Commonwealth proved the necessary elements of intimidation of a witness beyond a reasonable doubt. Baker's contrary claim warrants no relief.

In his second issue, Baker argues that the trial court erred in instructing the jury regarding the law pertaining to the date of the offense. *See* Appellant's Brief at 22-26. Baker posits that because the Commonwealth consistently argued the crime was committed on January 19, 2019, the trial court's instruction to the jury "that it could disregard the reasonable doubt it

was expressing about the particular and essential date of the offense … was an abuse of discretion." *Id*. at 26.

Before we reach the merits of Baker's claim, we must determine whether the issue has been preserved for appellate review. A party's obligation to object to jury instructions are set forth in Pennsylvania Rule of Criminal Procedure 647, which provides, in relevant part, as follows:

> **Rule 647.  Request for Instructions, Charge to the Jury, and Preliminary Instructions**
>
> (B) No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.

Pa.R.Crim.P. 647(B). *See also* Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of").

Interpreting this rule, our Supreme Court has held that the plain language of Rule 647(B) requires a specific objection to assign error to a controverted aspect of or omission from a jury charge. *See Commonwealth v. Pressley*, 887 A.2d 220, 223 (Pa. 2005). The Court has held further that in the event counsel fails to posit the appropriate objection prior to the jury's retirement for deliberation, the underlying point is not preserved for appellate review and will be deemed waived on appeal. *See id*. *See also Commonwealth v. Sherwood*, 982 A.2d 483, 505 (Pa. 2009) (citing Pa.R.Crim.P. 647(B)); *Commonwealth v. Montalvo*, 956 A.2d at 935-936 (Pa. 2008) (holding that the law is clear that in order to preserve a claim

predicated on an allegedly erroneous jury instruction, a litigant must raise an objection before the jury retires to deliberate).

Our review of the record reflects that after the jury began deliberations, they contacted the judge with two questions. *See* N.T., 9/27/22, at 129-30. The first question pertained to the importance of the dates and times charged and requested that the jury instruction be repeated. *See id*. at 130. Thereafter, the trial court, prosecutor, and defense counsel had a lengthy discussion addressing the jury's request and the appropriate avenue for the court to proceed. *See id*. at 130-37. Upon reaching an agreement on how the trial court would respond to the question, the court stated, "So I will read that. And then at the end I'll say it's up to you to determine. All right. Are we good with that question?" *Id*. at 137. Whereupon, both parties responded affirmatively. *See id*.

The jury was then brought back into the courtroom and the judge addressed the following question: "Ask how important are dates and times in regards to judge's instructions. Repeat instructions on dates and times." *Id*. at 139.

The record further shows the trial court stated the following to the jury:

So I will reread what I think you want. The information alleges that the crime was committed on or about January 19, 2019. You are not bound by the date alleged in the information. It is not an essential element of the crime charged. You may find [Baker] guilty if you are satisfied beyond a reasonable doubt that he committed the crime charged on or about the date charged in the information even though you are not satisfied that he committed it on the particular date alleged in the information. And it's going

to be up to you to determine how important the dates and times are.

*Id*. at 139-40. The court then addressed the second question presented, after which the jury was set back to continue its deliberations. *See id*. at 141.

As the record shows, at the conclusion of the instruction to the jury, Baker did not make any objection immediately after the instruction was given. Likewise, Baker did not lodge an objection before the jury returned to its deliberations. Accordingly, because Baker failed to object to the trial court's jury instruction before the jury retired to deliberate, his claim is waived.

In his issues numbered three and four, Baker presents claims that the trial court erred in failing to grant his separate motions for mistrial. Upon a party making a motion for mistrial, the trial court is to "determine whether misconduct or prejudicial error actually occurred, and if so, to assess the degree of any resulting prejudice."[1] ***Commonwealth v. Sanchez***, 907 A.2d 477, 491 (Pa. 2006). "When a party moves for a mistrial, such relief is required only when an incident is of such a nature that its unavoidable effect is to

---

[1]    We note Pennsylvania Rule of Criminal Procedure 605 addresses mistrials, and provides, in pertinent part, as follows:

> **Rule 605. Mistrial**
> . . .
> **(B)** When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial court may declare a mistrial only for reasons of manifest necessity.

Pa.R.Crim.P. 605(B).

deprive the appellant of a fair and impartial trial." ***Commonwealth v. Feliciano***, 884 A.2d 901, 903 (Pa. Super. 2005) (internal quotation and citation omitted). "A trial court is vested with the sound discretion to determine whether a mistrial is warranted, and we review its decision for an abuse of that discretion." ***Id***. (citation omitted).

> An abuse of discretion is more than an error of judgment. On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised by the trial court was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Hudson***, 955 A.2d 1031, 1034 (Pa. Super. 2008) (citation omitted).

In his third issue, Baker argues that a mistrial was necessary after the Commonwealth elicited testimony regarding Baker's propensity to commit violence that Baker notes was ruled inadmissible in a pre-trial order. ***See*** Appellant's Brief, at 26-28. Specifically, Baker takes umbrage with the question posed by the prosecutor to Commonwealth witness Brandon Magusiak,[2] which inquired about Magusiak's reticence to call the police. In response, Magusiak referenced a single occasion in which Baker "beat his son up and busted the mirror." ***Id.*** at 27 (citing N.T., 9/26/22, at 84). Baker claims

---

[2] Magusiak was dating one of Baker's daughters and living at Baker's home at the time of the incident. He was an eyewitness to the events between Baker and the one-year-old child.

- 11 -

the prosecutor "seemed to have wanted the [j]ury to hear that [Baker] was a violent man and should be feared." *Id*.

We have expressed that:

[o]rdinarily, admission of testimony which describes, or from which the jury may infer, past criminal conduct by a defendant constitutes reversible error. **However, not all such references warrant reversal**. An isolated[,] passing reference to prior criminal activity will not warrant reversal unless the record indicates that prejudice resulted from the remark. **There is no *per se* rule which requires a new trial for every passing reference to prior criminal conduct**. Additionally, the possible prejudicial effect of a reference to prior criminal conduct may, under certain circumstances, be removed by a cautionary instruction.

*Commonwealth v. Fletcher*, 41 A.3d 892, 895 (Pa. Super. 2012) (emphases in original, citation and ellipses omitted).

Where a defendant alleges the prosecutor elicited improper testimony, we must consider "whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate." *Commonwealth v. Bracey*, 831 A.2d 678, 682-83 (Pa. Super. 2003) (citation omitted).

In addressing this issue, the trial court offered the following:

At trial, Mr. Magusiak was asked by the Commonwealth why he did not report [Baker's] misconduct to the police. Mr. Magusiak then stated police had visited [Baker's] residence on numerous occasions, claiming one occasion where [Baker] "beat his son up and busted a mirror" before the objection [by defense counsel]. Following a sidebar with counsel at the bench, the [c]ourt allowed [the prosecutor] to take Mr. Magusiak out of the courtroom to instruct him regarding the exclusion of any alleged uncharged

- 12 -

conduct. [The prosecutor] explained to the [c]ourt and [defense counsel] at sidebar the purpose of her questioning was to demonstrate why Mr. Magusiak did not report [Baker] to the police. Following Mr. Magusiak's return to the witness stand, he explained he did not think the police would believe him.

Because the Commonwealth was able to instruct Mr. Magusiak regarding this [c]ourt's [o]rder excluding any alleged uncharged conduct and because Mr. Magusiak's testimony clarified he did not report [Baker] to the police because he did not think they would believe him, this [c]ourt's October 14, 2021 [o]rder excluding any alleged uncharged conduct was not violated by the Commonwealth's direct examination of Mr. Magusiak. Accordingly, no reversible error occurred.

Trial Court Opinion, 5/18/23, at 5-6. We agree that no reversible error occurred.

It is undisputed that the trial court entered a pretrial order stating, "[Baker's] motion to exclude [Baker's] alleged uncharged 'conduct' is hereby granted, the Commonwealth having no objection. Should testimony at trial open the door on this issue, the [c]ourt will entertain the issue further at sidebar if raised by the parties." Order, 10/14/21, at 1 ¶ 3.

In addition, our review shows that defense counsel challenged Magusiak's credibility during opening statements when he stated that Magusiak "is not a naïve baby. He has some worldly experience. He doesn't even pick up the phone to call anybody." N.T., 9/26/22, at 41. Subsequently, during the Commonwealth's direct examination of Magusiak, after Magusiak acknowledged that he did not call the police, i.e., did not "even pick up the phone", the prosecutor asked him, "And why didn't you call the police?" *Id*. at 84. Magusiak replied, "Because I've seen on numerous occasions the police

- 13 -

come to the house – or, like this one time, like he beat his son up and busted the mirror." *Id*. Defense counsel immediately lodged an objection, and a sidebar was convened. *See id*.

During the sidebar, the prosecutor explained, "I was not obviously attempting to get into active talk about that. I understand those incidences are not relevant." *Id*. at 85. She further stated that "[w]hat I was asking him is why he didn't personally call the police, and obviously, that has been made an issue already in [d]efense counsel's opening. So, I was trying to get to why, you know he didn't feel comfortable calling the police about that." *Id*. In addition, the Commonwealth indicated that it had instructed the witness not to discuss prior incidents and was granted the opportunity to reiterate that to the witness outside of the jury's presence. *See id*. at 86. Moreover, as the sidebar was concluding, the trial court offered to provide a cautionary instruction to the jury, but its offer was declined by defense counsel. *See id*.

On the record before us, we conclude that the Commonwealth did not intentionally elicit the remark from Magusiak. In addition, Magusiak's answer was responsive to the question posed by the Commonwealth concerning why he did not call the police, which was a fair response to the contention raised by defense counsel. Also, there is no indication on the record that the Commonwealth exploited the reference to Baker's conduct, and Baker makes no such allegation. Finally, when presented with the opportunity of a curative instruction, defense counsel declined the invitation. Under these

circumstances, we conclude the trial court did not abuse its discretion in denying Baker's motion for mistrial. ***See Bracey***, 831 A.2d at 682-83.

Baker next argues that the trial court improperly denied his request for mistrial after the Commonwealth elicited testimony from a former Children and Youth intake worker about her concerns of Baker being around the victim. ***See*** Appellant's Brief, at 28-30. Essentially, Baker contends that the former Children and Youth worker was improperly permitted to testify as an expert regarding her concerns of abuse by Baker, even though she was a lay witness.

In addressing this issue, we are mindful that questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion. ***See Commonwealth v. Maloney***, 876 A.2d 1002, 1006 (Pa. Super. 2005). Pa.R.E. 701 addresses the admission of opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Here, it is undisputed that former Children and Youth worker Rebecca McKinley-Walsh had not been qualified as an expert witness. McKinley-Walsh

- 15 -

testified that, through her employment she became involved with an open investigation of abuse alleged to have happened between Baker and the victim. *See* N.T., 9/26/22, at 213-14. She also indicated that she had interactions and discussions with Baker during an interview. *See id*. at 219. Thereafter, the prosecutor asked, "Did you have any concerns with [Baker] being around the victim … in this case?" *Id*. McKinley-Walsh answered "Yes." *Id*. Defense counsel then objected, arguing that this testimony offered an expert opinion, and the trial court overruled the objection. *See id*. at 219-20. McKinley-Walsh then stated, "I had concerns. There was a lot of, I'd say gut feeling things, like, over a course of a period." *Id*. at 220. Defense counsel again objected, and, while the objection was being made, McKinley-Walsh said, "like a red flag." *Id*. Baker asked that the statement be stricken, and the trial court ruled that the words "gut feeling" would be stricken. *Id*.

Upon review of the record, we conclude that McKinley-Walsh's testimony was within the scope of Pa.R.E. 701. We discern no abuse of discretion in the trial court's admission of McKinley-Walsh's testimony, which did not require her to be qualified as an expert in order to discuss her concerns of Baker being around the victim and amounted to permissible lay opinion testimony regarding her observations. Specifically, she testified as to matters within her personal knowledge and experience after having been involved in interviews with Baker. Also, the testimony was helpful in that it aided the jury's clear understanding of the witness's testimony about her interviews and

interactions with Baker. Importantly, the opinion offered by McKinley-Walsh was not based on scientific, technical, or other specialized knowledge. Accordingly, we conclude that McKinley-Walsh's testimony was rationally based on her experience, was helpful to the trier of fact, and was not based on specialized knowledge that would have render it within the scope of Pa.R.E. 702 concerning expert testimony. Therefore, we conclude that the trial court did not err in overruling Baker's motion for a mistrial.

Baker last argues that the Commonwealth presented testimony that impermissibly vouched for the credibility of Magusiak. **See** Appellant's Brief at 30-31. Particularly, Baker asserts that the Commonwealth committed prosecutorial misconduct when Sergeant Martin Hanes was "deliberately called to assure the jury that [Magusiak], the sole alleged eyewitness, should be believed despite testifying inconsistently in trial during cross-examination." **Id**. at 31. Baker posits the trial court abused its discretion in overruling his timely objection. **See id**.

Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. **See Commonwealth v. Freidl**, 834 A.2d 638, 641 (Pa. Super. 2003). The basic requisite for the admissibility of any evidence in a case is that it be competent and relevant. **See id**.

Pursuant to Pa.R.E. 613(c), a witness's prior consistent statement is admissible to rehabilitate their credibility. That rule states:

**(c) Witness's Prior Consistent Statement to Rehabilitate**. Evidence of a witness's prior consistent statement is admissible to rehabilitate the witness's credibility if the opposing party is given an opportunity to cross-examine the witness about the statement and the statement is offered to rebut an express or implied charge of:

> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; or
>
> (2) having made a prior inconsistent statement, which the witness has denied or explained, and the consistent statement supports the witness's denial or explanation.

Pa.R.E. 613(c). "[U]nder Pa.R.E. 613(c), a prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence." Pa.R.E. 613, Comment. This Court has reiterated that "prior consistent statements may be admitted to corroborate or rehabilitate the testimony of a witness who has been impeached, expressly or impliedly, as having a faulty memory, or as having been induced to fabricate the testimony by improper motive or influence." ***Commonwealth v. Baker***, 963 A.2d 495, 504 (Pa. Super. 2008).

Our review of the record reflects that near the end of the trial, the Commonwealth called Sergeant Hanes of the State College Borough Police Department to testify. ***See*** N.T. 9/27/22, at 14. During his testimony Hanes discussed his involvement with the case, his interviews, and his reports. At certain points, the Commonwealth questioned Hanes about perceived inconsistencies among the various witnesses with whom he had dealt. During

- 18 -

the examination, the Commonwealth inquired, "[S]o through your investigation what did you learn? Did you learn more about what had happened, when it happened, those kind of things?" *Id*. at 18. In response, Hanes explained the similarities between two witnesses' testimonies, and he stated, "[Magusiak] has always been consistent, it was what he testified yesterday." *Id*. Defense counsel immediately objected, arguing that the Commonwealth was vouching for its witnesses. *See id*. at 18-19. The prosecutor responded to defense counsel's claim stating, "I don't believe that he — he's not stating [Magusiak's] telling the truth, he's saying the times I've spoken with him, what he says happened has been consistent." *Id*. at 19. The trial court acquiesced stating, "Right. I believe that is okay." *Id*.

We agree with the Commonwealth and the trial court that Hanes's statement was not an opinion on Magusiak's truthfulness. Rather, it was an unsolicited comment concerning the consistency of Magusiak's statements.

Moreover, as the Commonwealth states in its brief, "While this was unprompted by the Commonwealth's question, it would be allowable even if asked as [Baker] made multiple arguments that [Magusiak] was not a credible or consistent witness before this statement was made in Court." Commonwealth's Brief, at 47-48. As the Commonwealth points out, "[Baker] had previously attacked the credibility of [Magusiak]." *Id*. at 48. *See also e.g.*, N.T., 9/26/22, at 127-28 (Baker cross-examining Officer Craig Ripka about inconsistencies in Magusiak's statements during an interview), 164-66

(Baker cross-examining Abigail Baker about version of events conflicting with those offered by Magusiak). In light of Baker's challenges to the consistency of Magusiak's statements, we view Hanes's statement not a personal opinion vouching for Magusiak's truthfulness, but as a reflection on the consistency of his statements to police. *See* Pa.R.E. 613(c); *Baker*, 963 A.2d at 504. Consequently, we conclude that the trial court did not abuse its discretion in overruling Baker's objection and admitting the comment.

Judgments of sentence affirmed.