**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TONI KIRK | : | |
| | : | |
| Appellant | : | No. 222 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 5, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001115-2021

BEFORE: LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.: **FILED APRIL 15, 2025**

Toni Kirk ("Kirk") appeals from the judgment of sentence entered by the Chester County Court of Common Pleas ("trial court") following her convictions of two counts of aggravated assault, eleven counts of recklessly endangering another person, five counts of simple assault, and one count each of causing a catastrophe, risking a catastrophe, and criminal mischief.[1] On appeal, Kirk challenges the sufficiency of the evidence and alleges the trial court erred by not granting her request for a mistrial. After review, we affirm.

Kirk lived in an apartment complex that was three stories tall and had forty-five units in North Coventry Township, Chester County. On July 30,

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a)(1), 2705(a), 2701(a)(1), 3302(a), (b), 3304(a)(1).

2020, at around 7:00 p.m., a fire broke out in Kirk's apartment. As the complex was being evacuated, Kirk told her neighbor, Shannon Bach ("Bach"), that she had set her bed on fire. Once outside, Bach observed Kirk was falling down and following other people around. Officer Victor Machese responded to the fire and found Kirk outside pacing and twitching, and noted she was making paranoid statements. Kirk told Officer Machese that her boyfriend, Deshawn Trump ("Trump") had set the fire in her apartment.

The fire was brought under control on July 31, 2020, at which point only the outside masonry of the building was left standing. The fire caused injuries to several residents. Upon subsequent investigation, the police learned that Trump was not in the area of Kirk's apartment on the day of the fire. Further, Chief Fire Marshall John Weer found that the fire at Kirk's apartment complex was started by human hands and the origin of the fire was Kirk's mattress. Police arrested Kirk, and the Commonwealth charged her with the above-listed crimes.

After multiple continuances, a jury trial commenced on October 9, 2023. At trial, Kirk testified that Trump set the mattress on fire and that he set the fire to kill her, noting Trump's abuse and prior criminal history. Trump testified that he had met Kirk about a month before the fire and had stayed at her apartment; however, on the day of the fire, he indicated he was in Pottstown with friends. On October 12, 2023, the jury found Kirk guilty on all counts. On December 5, 2023, the trial court sentenced Kirk to an aggregate

term of ten to twenty years in prison.  Kirk filed a timely appeal.  Both Kirk and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.  Kirk raises two issues for our review:

(1)    Whether the evidence was insufficient as a matter of law such that no reasonable fact finder could have found [] Kirk guilty of the charges?

(2)    Whether the trial court erred by not granting Counsel's request for a mistrial when Officer Templin, on direct examination, made a prejudicial and irrelevant statement that [] Kirk was "involved" with prior "disturbances or theft of packages" at the Ashwood Apartment complex?

Kirk's Brief at 3.

## Sufficiency of the Evidence

Kirk argues that the evidence was insufficient to support her convictions, as there was no direct evidence that she started the fires.  *Id.* at 9.  She contends instead that the evidence established that Trump started the fire. *Id.* at 9-10.  She claims Trump minimized his relationship with her, that none of his alibi witnesses were interviewed, and digital data showing his phone away from the scene of the fire could be explained by Trump giving his phone to one of his friends.  *Id.*

Although Kirk purports to challenge the sufficiency of the evidence, her arguments attacking Trump's credibility "conflate the concepts of sufficiency and weight of the evidence."  *Commonwealth v. Juray*, 275 A.3d 1037, 1043 (Pa. Super. 2022).  This Court has explained that a sufficiency of the evidence review does not include an assessment of witness credibility.  *Id.*

- 3 -

"Instead, such arguments are more properly characterized as challenges to weight of evidence." *Id.* (citations omitted).

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[] concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Rivera*, 238 A.3d 482, 495 (Pa. Super. 2020) (citation omitted).

Here, Kirk failed to preserve a claim challenging the weight of the evidence prior to sentencing or in a post-sentence motion; thus, a weight claim is waived. *See Commonwealth v. Thompson*, 93 A.3d 478, 490 (Pa.

Super. 2014) ("A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.").

In any event, we conclude that, viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient to establish Kirk started the fire. *See* Trial Court Opinion, 8/6/2024, at 25 (finding "the Commonwealth presented sufficient circumstantial evidence to support a finding by the jury that [Kirk] set the fire"). Indeed, Bach testified that Kirk admitted that she started the fire by setting her own bed on fire immediately after the fire started. *See* N.T., 10/9/2023, at 46. Bach did not see anyone else leave Kirk's apartment. *Id.* at 47-48. Further, the Commonwealth presented evidence of Trump's location based on his cell phone, which indicated Trump was in Pottstown at the time the fire started—evidence the jury clearly found credible. N.T., 10/11/2023, at 177-186. Therefore, the evidence is sufficient to support Kirk's convictions.

## Motion for Mistrial

Kirk argues the trial court should have granted her motion for a mistrial after the prosecution permitted the jury to hear testimony that police responded on several occasions to Kirk's apartment complex for disturbances or theft of packages that involved Kirk. Kirk's Brief at 10-11. Kirk argues that this testimony was highly prejudicial, deprived her of her right to a fair and impartial trial, and, should have entitled her to a mistrial. *Id.*

Our review of a trial court's denial of a motion for mistrial is "limited to determining whether the trial court abused its discretion." ***Commonwealth v. Gilliam***, 249 A.3d 257, 274 (Pa. Super. 2021) (citation omitted). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." ***Id.*** (citation omitted).

> [O]rdinarily, admission of testimony which describes, or from which the jury may infer, past criminal conduct by a defendant constitutes reversible error. However, not all such references warrant reversal. An isolated[,] passing reference to prior criminal activity will not warrant reversal unless the record indicates that prejudice resulted from the remark. There is no per se rule which requires a new trial for every passing reference to prior criminal conduct. Additionally, the possible prejudicial effect of a reference to prior criminal conduct may, under certain circumstances, be removed by a cautionary instruction. Where a defendant alleges the prosecutor elicited improper testimony, we must consider whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate.

***Commonwealth v. Baker***, 313 A.3d 1112, 1120 (Pa. Super. 2024) (citations, quotation marks, and paragraph breaks omitted).

The record reflects that during trial, Officer Andrew Templin was called to testify by the Commonwealth about Kirk's behavior on the day of the fire. ***See*** N.T., 10/9/2023, at 118-39. The following exchange occurred during direct examination:

[Commonwealth]: Officer Templin, in your prior interactions with [] Kirk, did any of them specifically involve the substance like controlled substances?

[Officer Templin]: We were -- I was dispatched to her apartment complex, Ashwood Apartments, several times for disturbances or theft of packages that involved [] Kirk on those interactions --

[Kirk's counsel]: Objection again, Judge.

[Commonwealth]: I can rephrase Your Honor.

[Kirk's counsel]: It's irrelevant and it's prejudicial.

The Court: I'm going to strike from the jury's consideration this last answer; in particular, "theft of packages." I don't recall what else may have been said, but that is not proper consideration for you, members of the panel --

[Kirk's counsel]: Can I -- I'm sorry. Could I approach at sidebar again, Judge?

The Court: You may. With the court reporter, please. Go ahead.

[Kirk's counsel]: I would just make a motion for mistrial, Judge. It's not appropriate. And he's -- I understand that some of the drug activity may be labeled appropriate and allowable, but we've now gotten into other area that I don't believe are allowable.

The Court: I'm inferring that maybe you haven't gone over this with him question by question, which is okay, I understand that.

[Commonwealth]: There were a lot of prior instances. I can ask him a more specific question about specific demeanor and why he believes that to be associated with being under the influence as a police officer.

The Court: Well, I'm going to give [the Commonwealth] some latitude in terms of asking, not leading but persistent-like questions.

[Kirk's counsel]: Sure.

The Court: And maybe that will avert it.

- 7 -

[Commonwealth]: And I'll just say, Your Honor, he didn't say, I was dispatched because Toni Kirk was stealing packages. He said, "For a package." I don't actually believe --

The Court: He did. He volunteered the word, "theft." Everybody --

[Commonwealth]: I mean she could have been reported from, that's just the way he described it so.

The Court: Well, he did. All right. Let's, again, try to proceed in a careful fashion --

[Commonwealth]: Yes, Your Honor.

The Court: -- you reserve the right. Your motion for mistrial is denied.

[Kirk's counsel]: Okay. Thank you.

The Court: … Is there any member of the panel who will not follow the instructions that I've just given you that you are to disregard the last answer given by this witness? If you will not follow my instruction, would you please raise your hand now.

(No response.)

The Court: Let the record reflect that no juror has raised their hand. Proceed.

*Id.* at 130–33.

Preliminarily, as the trial court noted, "it was not evident from the officer's statement whether [Kirk] was the complaining party or a suspect regarding the previous thefts." Trial Court Opinion, 8/6/2024, at 28. In any event, the Commonwealth was merely asking Officer Templin about whether his prior interactions with Kirk involved drug use, and did not purposefully elicit the remark from the officer. Further, the trial court's prompt instruction

to the jury to disregard the witness' isolated statement about the "theft of packages" was sufficient to ameliorate any potential prejudice against Kirk and did not prevent the jury from rendering a true verdict. *See Baker*, 313 A.3d at 1120. The jury is presumed to follow the trial court's instructions, *see Gilliam*, 249 A.3d at 274, and here, the trial court expressly polled the jury to ensure each juror would follow its instruction. N.T., 10/9/2023, at 133. In light of the foregoing, the trial court did not abuse its discretion in denying Kirk's motion for a mistrial and her second claim is without merit.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2025